UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| AMELIA WOZNIAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-919-JDT-WTL |
| | ) | |
| THE INDIANA UNIVERSITY BOARD OF | ) | |
| TRUSTEES and DAVID J. BODENHAMER | ) | |
| in his individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 33)[1]**

The Plaintiff, Amelia Wozniak, was fired in January 2005 from her job as Director

of Development & Communications of The Polis Center, an Indiana University research

center at Indiana University Purdue University Indianapolis.  She brings this claim,

pursuant to 42 U.S.C. § 1983, alleging that the Defendant, David J. Bodenhamer,

deprived her of a protected property interest – her job – without providing her with the

procedural due process protections required by the Constitution.  She also brings

supplemental state law claims of constructive fraud and promissory estoppel, asserting

that Defendant Indiana University Board of Trustees ("IU") misled her or reneged its

promises, thereby denying her the benefits and protections owed to a director.

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

The Defendants filed a Motion for Summary Judgment (Doc. No. 33) on June 28, 2006.  Mr. Bodenhamer and IU assert that Ms. Wozniak was an at-will employee who did not have a protected property interest and could be fired at any time, for any reason, or, in fact, for no reason at all.  Moreover they contend the evidence establishes that they did not mislead her about her job or the benefits that she would receive.

Ms. Wozniak initially filed state law claims of wrongful termination and negligent misrepresentation against the Defendants and a § 1983 claim against IU.  However, in her response to the summary judgment motion, she concludes that she has insufficient evidence to support these state law claims and acknowledges that the doctrine of sovereign immunity precludes her § 1983 claim against IU.  (Pl.'s Resp. 1 n.1.)  The court determines that she has chosen to abandon these claims, and therefore will **dismiss** these claims **with prejudice**.

The motion for summary judgment on the other claims is fully briefed.  The court rules as follows.

## I.  BACKGROUND

Ms. Wozniak was working as the Director of Annual Giving at Valparaiso University on March 26, 2001, when she applied to The Polis Center ("Polis") after reading a newspaper advertisement for the position.  (Wozniak Dep. Ex. 8.)  Her husband had been hospitalized, and she was interested in obtaining a job in Indianapolis where she could be closer to family during her husband's hospitalization.

(Wozniak Dep. 24-25.)  She was also interested in obtaining a job with greater management responsibility.  (*Id.* at 24.)  The advertisement in *The Indianapolis Star* sought applications for the position of Development & Communications Director.  (*See* Wozniak Dep. Ex. 7.)  This position reported to Mr. Bodenhamer, who was and is Polis' executive director, and to a director with the Indiana University School of Liberal Arts, of which Polis was a part.  (*Id.*)

Ms. Wozniak received a telephone offer of an interview and subsequently a packet of materials about the job.  (*Id.* at 54-55.)  She underwent two rounds of interviews (*see id.* at 54-90), during which she met with the center's senior staff (*id.* at 62), heard Mr Bodenhamer's expectations for the person filling the job (*id.* at 69-71, 75-77), and learned that funding was set aside to support the position for about three years (*id.* at 73).  At some point in May 2001, Mr. Bodenhamer called on the telephone and offered her the job with a salary of $55,000 a year.  (Compl. 10; Wozniak Dep. 85-86.) Mr. Bodenhamer did not make any other promises or offers at this point.  (Wozniak Dep. 86.)  "It was just a very simple, this is it."  (*Id.*)

Ms. Wozniak accepted Mr. Bodenhamer's verbal offer by a return telephone call, after giving oral notice of her resignation to Valparaiso.  (*Id.* at 92-94.)  She subsequently received a  written letter on June 1, 2001, from Mr. Bodenhamer confirming the offer and the job responsibilities.  (Wozniak Dep. Ex. 12.)  She accepted the offer by signing the letter and returning it.  (*Id.*)

Ms. Wozniak received a second written offer in a letter dated June 11, 2001, from the dean of the Indiana University School of Liberal Arts, Herman J. Saatkamp, Jr. (Wozniak Dep. Ex. 13.)  This letter differed from Mr. Bodenhamer's in one relevant respect.  Instead of offering her the position of Director of Development & Communications, Dean Saatkamp offered her the position of "Visiting Research Associate . . . with the title of Director of Development & Communications."  (*Id.*)  On June 11, 2001, she was no longer working at Valparaiso and had moved to Indianapolis.  (Wozniak Dep. 96-98.)  She received Dean Saatkamp's letter June 14, 2001, her first day of work.  (*Id.* at 98.)  She asked Mr. Bodenhamer's secretary about the change in job title and was told she needed to sign the letter or she wouldn't be on the payroll.  (*Id.* at 98-99.)  Mr. Bodenhamer later told her "it was just a classification." (*Id.* at 99.)   She did not understand what that job classification meant.  (*Id.* at 100.)

Ms. Wozniak worked at Polis with apparent success until January 2005 (*id.* at 130-36), when Mr. Bodenhamer became upset about her handling of a potential donor to a project that he wanted to start (*id.* at 136-40).  Although the record is less than clear on what happened, Ms. Wozniak believed that Mr. Bodenhamer thought her actions (or inaction) "made him look bad."  (*Id.* at 139.)  Mr. Bodenhamer summoned her to his office on January 14, 2005, and told her that he was terminating her position effective January 31, 2005.  (Compl. ¶ 14; Wozniak Dep. 139.)

The university's human resources called Ms. Wozniak and said that university policy required Mr. Bodenhamer to give her thirty days notice.  (*Id.* at 146.)  Her termination date was then changed to February 13, 2005.  (Compl. ¶  14.)  Ms. Wozniak

called the human resources department again to get information about her post-firing benefits and was told the department could not help someone in her classification. (Wozniak Dep. 150-51.)  This was the first time that she learned of an issue relating to her job classification.  (*Id.* at 152.)   A human resources employee noted the existence of a faculty dispute process but told Wozniak it did not apply to her because she was not a faculty member.  (*Id.* at 151.)  She was referred to IU's employment policies posted at its human resources web site.  (*Id.* at 153.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if a reasonable fact finder could find for the nonmoving party.  *Hottenroth v. Village of Slinger*, 388 F.3d. 1015, 1027 (7th Cir. 2004).  If there is evidence that would allow a reasonable jury to return a verdict for the non-moving party, then summary judgment is not appropriate.  *Id.*

When deciding a motion for summary judgment, the court must consider all evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party.  *See Anderson*, 477 U.S. at 255.  The moving party "bears the

initial responsibility" of identifying specific facts within the record that "demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  When a motion for summary judgment is made and properly supported, the non-moving party may not rest on the pleadings or denials but must set forth the specific evidence showing there is a genuine issue of material fact that requires a trial.  Fed. R. Civ. P. 56(e).  A mere scintilla of evidence will not do.  *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (citing *Anderson*, 477 U.S. at 252).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  *Celotex*, 477 at 323-24.  At the summary judgment stage, the judge's function is "to determine where there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## III.  DISCUSSION

### A.  Procedural Due Process

To prevail on her civil rights claim, alleging a deprivation of property without due process of law, Ms. Wozniak must establish that she had a protected property right in her employment.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  Otherwise, her claim may allege a wrong, but it does not rise to the level of a constitutional violation – a necessary requirement for bringing an action under § 1983, which is the basis of this court's jurisdiction.

Ms. Wozniak has staked her claim of a protected property right in IU's personnel Policy Manual, which she alleges afforded her certain grievance procedures.  (Pl.'s Resp. 12-13.)  She also appears to suggest that a property right springs, directly or indirectly, from the Defendants' initial offer, and her acceptance, of employment as a director.  (Pl.'s Resp. 12.)  Even in the developing state of Indiana employment law, these claims fail as a matter of law.

A property interest in public employment arises when the employee can show a legitimate claim of entitlement to continued employment.  *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005).  The general rule is that such entitlement claims develop from "rules or mutually explicit understandings."  *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).  Yet the sufficiency of these rules or understandings "must be decided by reference to state law."  *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

Indiana traditionally has acknowledged two forms of employment: at-will and employment for a definite or ascertainable term.  *Orr v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997).  An employee who serves at-will can be fired at any time, with or without cause.  Such an employee generally has no property interest in further employment.  *Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998); *Phegley v. Ind. Dep't of Highways*, 564 N.E.2d 291, 295 (Ind. Ct. App. 1990); *Ind. Alcoholic Beverage Comm'n v. Gault*, 405 N.E.2d 585, 589 (1980).

The Indiana Supreme Court has declared that the employment at-will doctrine "is a rule of contract construction."  *Orr*, 689 N.E.2d at 717.  "If the parties choose to

7

include a clear job security provision in an employment contract, the presumption that the employment is at-will may be rebutted." *Id.* (citing *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192 (Ind. 1992)).  The employment at-will doctrine does not impose "substantive limitations on the parties' freedom to contract."  *Id.*

Even so, the court "has recognized only three ways to avoid or rebut the presumption of at-will employment." *Id.* at 718.  These exceptions are independent consideration supporting the employment contract, a public policy exception arising from a statutory right or duty (such as filing a workmen's compensation claim), and promissory estoppel.  *Id.* at 718.  Of these exceptions only the first, consideration, generally has the potential to establish a property right.

In *Jarboe v. Landmark Community Newspapers*, 644 N.E.2d 118, 122 (Ind. 1994), the Indiana Supreme Court declared that the promissory estoppel doctrine could mitigate the harsh consequence of employment at-will when, in some situations, an employee relied to his or her detriment on an employer's promise.  However, the remedy was limited to damages directly resulting from this reliance.  *Id.*  "[It] will not include the benefit of altering the employment status from an at-will relationship to a permanent one which requires just cause for termination."  *Id.*  Thus, while the promissory estoppel doctrine may allow an employee to collect damages for his or her reliance on an employer's promise, it does not create an entitlement to continued employment.

8

Likewise, the public policy exception may rebut the presumption of at-will employment, in a wrongful termination case. However, this would usually not create an entitlement to continued employment. Rather, the exception is invoked to prevent an employer from disregarding statutory rights or duties, such as an employee's right to file a workmen's compensation claim or refusing to perform an illegal act. *Orr*, 689 N.E.2d at 718.

Consideration is a different matter. The Indiana Supreme Court has repeatedly recognized the principal that adequate independent consideration, apart from the employee's willingness to work, may convert employment at-will "into a relationship that the employer can terminate only for good cause." *Orr*, 689 N.E.2d at 714; *see also Speckman*, 540 N.E.2d at 1192; *Romack v. Pub. Serv. Co. of Ind.*, 511 N.E.2d 1024, 1026 (1987) (adopting *Romack v. Pub. Serv. Co. of Ind.*, 499 N.E.2d 768, 776-80 (Ind. Ct. App. 1986) (Conover, J., dissenting)).[2] Such consideration may establish a property right.

The Indiana Supreme Court has yet to expand the exceptions. In *Orr*, the court expressly declined to overrule its requirement of independent consideration in finding that an employee manual was not an exception to the at-will doctrine. *Orr*, 689 N.E.2d

_____

[2] In *Romack,* Judge Conover found that an employee with a "lifetime employment" job who was recruited by a utility because of his special expertise and who relied on the utility's assurances of "permanent employment," was no longer an employee at-will. *Romack*, 499 N.E.2d at 776-77. Judge Conover determined that the employee's relinquishment of his job, under the specific conditions in the case, met "the independent consideration requirement needed to elevate him above the terminable at-will status." *Id.* at 777. In *Jarboe*, the Indiana Supreme Court noted that "the principal issue [in *Romack*] was constructive fraud, not promissory estoppel." *Jarboe*, 644 N.E.2d at 122 n.2.

9

at 720.  While it did not foreclose the possibility of reconsidering this issue, *see id.*, neither it nor the Indiana Court of Appeals have yet found an employee handbook in itself to be a binding unilateral contract.  *See McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 891-93 (Ind. Ct. App. 2007).

Indiana Court of Appeals decisions have been less uniform in their approach to property rights in public employment.  Some have focused on the employee's status – discerning a property right only if the employee had a contract of a definite term or fell within one of the three exceptions.  *See, e.g.*, *Murray v. Monroe-Gregg Sch. Dist.*, 585 N.E.2d 687, 691 (Ind. Ct. App. 1992) ("an agreement must provide for a definite term of employment in order to alter the at-will status of the employee").

Other appellate courts have looked to see if a state statute or the body's adopted rules and regulations define the employee's property rights or document the mutually explicit understandings, which, in general, may provide a property right.[3]  *See, e.g.*,

---

[3]  The "mutually explicit understandings" basis for a property right has its origins in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (stating that property rights and their dimensions "are defined by existing rules or understandings that stem from an independent sources such as state law – rules or understandings that secure certain benefits and that support claims of entitlement").  The Court in *Roth* was addressing the origins of rights generally, and in *Bishop v. Wood*, 426 U.S. 341, 344 (1976), the Court made clear that such rules or understandings must be judged by reference to state law.  The Court upheld the lower courts' determination that even though a city ordinance classified a police officer as a "permanent employee' and afforded him certain rights, the officer had no property interest because, under North Carolina law, he was an at-will employee in the absence of an employment contract containing a definite term.  *Id.* at 345-47, 345 n.9.

The Indiana Supreme Court's instruction in *Orr*, 689 N.E.2d at 717, stating that the employment at-will doctrine is only a rule of contract construction, could be interpreted as allowing a property right to derive from a non-contractual source, such as state statute or a municipal ordinance.  If so, the court has not identified whether such non-contractual property rights provide additional exceptions to the presumption of at-will employment or create an

(continued...)

*Wells v. Auberry*, 476 N.E.2d 869, 873-74 (Ind. Ct. App. 1985) (stating that department rule requiring demotions to be in conformance with rules and regulations gave non-merit deputy sheriff a protected property interest); *Town of Speedway v. Harris*, 346 N.E.2d 646, 650 (Ind. Ct. App. 1976) (finding probationary firefighter to have a "cognizable Fourteenth Amendment 'property' interest" arising from the municipality's rules and regulations).  Even under this more general analysis, an entitlement exists only when "the employee cannot be denied employment unless specific conditions are met." *Colburn v.Trs. of Ind. Univ.*, 973 F.2d 581, 589 (7th Cir. 1992).

The Seventh Circuit has embraced the latter approach in some cases.  *See, e.g.*, *Halfhill v. N.E. Sch. Corp.*, 472 F.3d 496, 500 (7th Cir. 2006).  In *Lawshe v. Simpson*, 16 F.3d 1475, 1481 (7th Cir. 1994) the court distinguished between property rights stemming from explicit contracts (is there consideration or a definite term) from those created by implied agreements (is there a mutually explicit understanding).  The issue was whether the policies and procedures in a city personnel manual could give rise to a property right.  *Id.* at 1480.  The court noted that, under Indiana law, an employee handbook, such as the personnel manual, was not an enforceable unilateral contract giving rise to a property right.  *Id.* at 1481.  However, that did not preclude the handbook from being evidence of a "mutually explicit understanding" giving rise to a property right

---

[3](...continued)
entitlement nonetheless even though, by definition, an at-will employee can be discharged for any reason "at any time, with or without cause."  *See id.*

under common law.  *Id.*  "[W]hether, under Indiana law, an employee handbook creates a contract is a different question from whether 'the policies and practices of the . . . institution' create a property right."  *Id.* (quoting *Shannon v. Bepko*, 684 F. Supp. 1465, 1478 (S.D. Ind. 1988).  *But see Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995) (noting the Supreme Court's conclusion in *Perry* that a combination of manual, guidelines, and practices might create a property right but only to the extent that such a claim would be recognized under state law).

Whatever approach is used, Ms. Wozniak has failed to support her claim of a protected property interest with evidence showing the existence of, or at least a factual dispute regarding, her entitlement to continued employment.  She has not alleged, nor does her evidence support, the existence of an employment contract of a definite term.  Even if Mr. Bodenhammer's reassurance, or perhaps warning, that funding existed to support her job for three years was viewed as a contract term, that period had expired.  Nor does she allege any independent consideration for her job, that a public policy exception applied, or that she relied on any promises, later breached, in accepting the offers of employment.[4]  (*See* Wozniak Dep. Ex. 110-12, 174.)  Under the analytical approach of *Orr*, Ms. Wozniak was an employee at-will and lacked a property interest.

---

[4] Ms. Wozniak has not argued that she falls within the *Romack* exception to at-will employment.  The *Romack* exception requires a showing that the employer knew the employee had a former job with assured permanency or assured non-arbitrary firing policies and that the employee agreed to accept the new job only after receiving guarantees of similar permanency.  *See McGarrity v. Berlin Metals, Inc.*, 774 N.E.2d 71, 81 (Ind. Ct. App. 2002).  Although the Complaint alleges that IU knew that Ms. Wozniak's former employer, Valparaiso University provided her with "assured non-arbitrary firing policies," she has not provided any evidence of this.  Nor has she shown that she sought and received assurances of similar rights from IU.

This leaves, then, Ms. Wozniak's claim of a protected property right stemming from IU's policies and practices. While written personnel policies, in themselves, do not rebut the presumption of at-will employment, under the reasoning of *Lawshe* and similar cases, the court must consider if these policies were evidence of a mutually explicit understanding.

Ms. Wozniak states that the Policy Manual affords a discharged employee the right to obtain a grievance and a hearing. (Pl.'s Resp. 12-13.) However, as the cases she cites point out, an employee's right to a hearing prior to being terminated does not establish a property right. *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (finding a probation officer's right to a pre-termination hearing under the court's personnel policies did not create a property right); *Moulton*, 150 F.3d at 805 (stating that the mere right to a notice and hearing, which does not constrain the employer's freedom of action, does not create a property right).

To establish her entitlement to continued employment, Ms. Wozniak must show that she could not be denied employment unless certain conditions were met. *See Colburn*, 973 F.2d at 589. Ms. Wozniak points to alleged grievance and separation pay policies and asserts that "a reasonable person . . . would have a well-founded understanding that Ms. Wozniak's employment could not be interrupted without her having recourse to the policies outlined in IU's Policy Manual." (Pl.'s Resp. 13.) However, the alleged grievance and separation pay policies only restrict the manner of an employee's discharge. They do not impose conditions that IU must meet before firing an employee, and Ms. Wozniak does not point to any personnel provisions that

13

do.  Her unsupported assertion about the effect of the Policy Manual is insufficient to withstand summary judgment.

Making matters worse, Ms. Wozniak did not provide the court with admissible evidence of the Policy Manual or IU's policies and practices.  Her brief merely cited Internet addresses, directing the court to various web pages of IU's Human Resources Department.  One of the cited pages, the most relevant one to this litigation, bears the notation, "Revised January 2005."  6.5 Problem or Grievance Resolution, http://www.hra.iupui.edu/Policy_Manual/policy/6_5.html.  This was the very month of her discharge, and Ms. Wozniak has not provided any evidence about when this policy took effect or the revisions that were made.  Thus the court would be guessing about its applicability to this litigation.  Citations to unauthenticated, out-of-court statements do not constitute admissible evidence.  *See Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (noting that a party must present admissible evidence to defeat a motion for summary judgment); *see also Bauman v. DaimlerChrysler AG*, 2005 WL 3157472 (N.D. Cal. Nov. 22, 2005) (finding *provided* web pages to be unauthenticated hearsay).

Even if the court were to consider these web pages, Ms. Wozniak's claim of a property right fails to clear two hurdles.  First, the policy described on the cited web page is only an offer of grievance procedures; it does not require IU to do anything absent an employee request.  6.5 Problem or Grievance Resolution § E, http://www.hra.iupui.edu/Policy_Manual/policy/6_5.html.  Secondly, the outcome of the hearing, whether conducted by a hearing officer or arbitrator, is merely advisory.  *Id.*  As such, the grievance procedure does not limit IU's freedom to discharge an employee for

14

any reason or without a reason.  It affords employees certain procedures.  It does not grant them a property right.

For these reasons discussed above, the court finds that whatever wrongs may have occurred in her termination did not rise to a constitutional violation because Ms. Wozniak was not deprived of a protected property interest.  In the absence of a constitutional violation, other issues related to her federal claim need not be discussed and the court will **dismiss** her § 1983 action, Count 1 of the Complaint **with prejudice**.

### B.  State Claims

Ms. Wozniak also asserts state law claims of promissory estoppel and constructive fraud against IU, pursuant to 28 U.S.C. § 1367, which provides the court with supplemental jurisdiction over claims sufficiently related to the claim on which original jurisdiction is based.  Although IU raised the defense of the Eleventh Amendment and the doctrine of sovereign immunity in its Answer, IU has waived this defense to Ms. Wozniak's state law claims to the extent that these claims can be addressed on the merits.  (*See* Defs.' Reply 7 n.2.)

Normally, when all federal claims have been dismissed, the district court should relinquish jurisdiction over the supplemental state-law claims rather than resolve them on the merits.  *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).  In such cases, the factors that determine whether supplemental jurisdiction is

15

appropriate –  judicial economy, convenience, fairness, and comity – usually weigh in favor of dismissal.  *Wright*, 29 F.3d at 1251.  However, the Seventh Circuit has recognized three circumstances when the balance may favor retention of the claim or claims.  These are when (a) the statute of limitations has run, precluding the filing of a complaint, (b) when substantial judicial resources have already been expended and remand of the issues to a state court will duplicate those efforts, and (c) when "it is absolutely clear" how the pendent claim must be decided because the court has already decided a dispositive issue or because the claim is frivolous.  *Id.*

The first factor is not here, or even normally, a concern because the Indiana "journeys account statute," Ind. Code § 34-11-8-1, generally gives plaintiffs three years to refile claims not dismissed adversely or because of the plaintiff's negligence in prosecuting.  *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).  Nor is the second factor in play because few judicial resources have been expended on Wozniak's state law claims.  The only issue is whether it is "absolutely clear" how the remaining claims must be decided.

The court has not yet determined any dispositive issues so dismissal without prejudice is appropriate unless the claims are without merit.  As the Seventh Circuit has observed, there are "various shades of frivolousness."  *Wright*, 29 F.3d at 1251.  In close calls, a state claim should be remanded.  *Id.*  However, when there are no difficult issues of state law and the disposition of the claim is clear as a matter of state law, then retention is proper.  *Id.* at 1252 (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993)).

16

*1. Promissory Estoppel*

Here, the disposition of Ms. Wozniak's promissory estoppel claim is clear.[5]  She alleges that IU advertised and offered her a position as a director, with the promise that this position "would carry certain procedural protections" that she was later denied. (Pl.'s Resp. 16-17.)  Both the newspaper advertisement (Wozniak Dep. Ex. 7), which solicited her application, and Bodenhamer's job offer (Wozniak Dep. Ex. 12), which she accepted, described the position as Director of Development & Communications for The Polis Center, as did a university job description (Wozniak Dep. Ex. 9).  Only when she received a subsequent job offer from Dean Saatkamp was the position described differently.  Dean Saatkamp offered her the position of "Visiting Research Associate in The Polis Center with the title of Director of Development & Communications." (Wozniak Dep. Ex. 13.)

For the purposes of determining whether this claim is without merit, the court accepts Ms. Wozniak's characterization of this second offer as a "bait and switch."  The Defendants have offered no explanation as to why a second job offer was made, except to imply, by describing Dean Saatkamp's offer as the "formal appointment letter," that somehow Mr. Bodenhammer's offer was inadequate.  (*See* Defs.' Br. Supp. 5.)  Nor have they offered any evidence that Mr. Bodenhammer was not authorized to offer

---

[5]  This is analyzed under the federal summary judgment standard.  However, this would also be true even under Indiana's more stringent summary judgment standard in which the non-moving party has no burden to produce evidence but the moving party must establish the absence of a factual dispute.  *See Jarboe*, 644 N.E.2d at 123.

employment at Polis, or any legal argument as to why Ms. Wozniak's acceptance of the first offer was not binding.[6]

Promissory estoppel, however, is not a contractual claim, so issues such as whether the first acceptance was enforceable or the second amounted to a modification are irrelevant.  In Indiana, promissory estoppel requires the following elements: "(1) a promise by the promissor; (2) made with the expectation that the promissee will rely thereon: (3) which induces reasonable reliance by the promissee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise."  *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001).

Here, the key is not whether the Defendants promised Ms. Wozniak a job as a director, but whether, by offering her this position, they directly, or in effect, promised her certain procedural protections.  Secondly, and just as importantly, Ms. Wozniak must have relied upon that promise of procedural protections to her detriment.

Although neither party has directly described the job protections that were, or should have been, available to a person in Ms. Wozniak's position,[7] the oversight is

---

[6]  The court also accepts Ms. Wozniak's contention that, by the time she receive Dean Saatkamp's letter, she was no longer in a position to renegotiate with the university.  She had moved to Indianapolis and was told that if she didn't sign the second offer, she would not be paid.  (Wozniak Dep. 96-99.)

[7]  Ms. Wozniak asserts that she "lost the right to challenge the termination of her employment" when she was reclassified as a research associate.  (Pl.'s Resp. 18.)  However, she has not provided any evidence showing that this was in fact so – only evidence of what she was told.  Although the parties argue about whether "director" was merely a title or a job classification, neither side explains how "directors" or "research associates" fit into IU's personnel scheme, or how the procedural protections differ for groups within that scheme.

18

immaterial because Ms. Wozniak states that no one from IU made any promises to her regarding the procedural protections that a director was entitled to receive upon discharge.  Specifically, Ms. Wozniak was questioned about her promissory claim (Compl. ¶¶ 40-45) and her allegation that IU made a promise (¶ 41) that it did not keep.

> Q  Okay.  Going to paragraph 41, it says . . . . "IU made a promise to Wozniak," and my question is similar.  Did anyone make any promises to you about the position at The Polis Center that were basically not honored?
> A  No.
> Q  Were you aware that there was actually a grievance procedure that was applicable to your position at Indiana University?
> A  No.

(Wozniak Dep. 174.)

In her brief, Ms. Wozniak does not address these responses but asserts that in the lines preceding these questions, she was commenting only on whether anyone said anything false to her.  (Pl.'s Resp. 3-4.)  This misses the point.  These answers reveal that she was unaware of any procedural protections, whether promised explicitly or implicitly.  While she periodically received e-mail messages from IU's Human Resources department (Wozniak Dep. 153-154), she did not look at the Policy Manual until January 24, 2005 (*id.* at 156).

Ms. Wozniak responds that because she previously served as a director at Valparaiso University, where she allegedly enjoyed the benefit of non-arbitrary firing policies, "it was entirely reasonable for her to assume that the position would carry certain procedural protections."  (Pl.'s Resp. 17.)  In her deposition, she stated that she relied on Defendants' representations that the Polis job was a full-time, professional

19

position.  (Wozniak Dep. 164.)  "There was nothing that indicated that it was not a full-time, professional, permanent, quote/unquote, position."  (*Id.*)

In a promissory estoppel claim, however, what matters is not the plaintiff's assumptions, but whether the defendant made (and breached) promises with the intent to induce an act, and the plaintiff's detrimental reliance on those promises.  Here Ms. Wozniak has denied that any promises were breached.  She further testified that no one ever promised her permanent employment (*id.* at 110) or made any representations about her job other than it being a full-time, professional job (*id.* at 165).  Her testimony reveals that she was ignorant about the procedural protections attaching to IU employment (whether as a director, a visiting research associate, or a professional employee) and therefore could not have relied on these protections.  In short, she denied receiving any direct promises or relying on any implied ones.

For these reasons, the Ms. Wozniak's promissory estoppel claim lacks merit, and the court will **dismiss** the claim **with prejudice**.

### 2.  Constructive Fraud

In her constructive fraud claim Ms. Wozniak alleges that IU had a duty to advise her of "her benefits and any available procedural protections," but instead misled her through "repeated misrepresentations" about the nature of her position.  (Pl.'s Resp. 18.)  In her statement of undisputed material facts, she also asserts that upon learning of Mr. Bodenhamer's decision to fire her, she inquired of IU's Human Resources

Department about the procedures available to her and was told that nothing could be done.  (*Id.* at 6.)

Here, the court cannot determine Ms. Wozniak's claim to be completely without merit on the basis of the scant arguments devoted to this claim.  *See Heaton & Eadie Prof'l Servs. Corp. v. Corneal Consultants of Ind., P.C.,* 841 N.E.2d 1181, 1189 (Ind. Ct. App. 2006) (stating the elements of constructive fraud).  The Defendants have challenged Ms. Wozniak's ability to show that Mr. Bodehamer or others attempted to mislead her about the classification of her position, or that she relied upon these misrepresentations or silence despite a duty to speak.  However, the evidence does not show that Ms. Wozniak has denied that any misrepresentations were made.  (*See* Wozniak Dep. 174-178.)  Nor does it preclude any possible showing that she relied on any misrepresentations to her detriment.

For these reasons, the court will **dismiss** Ms. Wozniak's constructive fraud claim **without prejudice**.[8]

## IV.  CONCLUSION

For these reasons discussed above, the court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment (Doc. No. 33).  Accordingly, the court

---

[8]  Defendants assert that all of Ms. Wozniak's claims against Mr. Bodenhamer must be dismissed because he was acting within the scope of his employment and the Indiana Tort Claims Act bars actions against such employees individually.  *See* Ind. Code § 34-13-3-5(b).  This is a correct reading of Indiana law.  However, the court does not read Ms. Wozniak's complaint to allege any state law claims against Mr. Bodenhamer.  Therefore, there are no state law claims against him to dismiss.

will **DISMISS WITH PREJUDICE** Ms. Wozniak's due process violation, wrongful

termination, negligent misrepresentation, and promissory estoppel claims, which are

Counts One, Two, Four, and Five of her Complaint, and **DISMISS WITHOUT**

**PREJUDICE** her constructive fraud complaint, Count Three.  Judgment will be entered

by separate order.

ALL OF WHICH IS ENTERED this 20th day of March 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

John H. Haskin
HASKIN LAUTER LARUE & GIBBONS
jhaskin@hlllaw.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Andrew G. Jones
HASKIN LAUTER LARUE & GIBBONS
ajones@hlllaw.com

Tareen Zafrullah
BAKER & DANIELS
tareen.zafrullah@bakerd.com